UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VC HEALTHY LIVING, INC., VIVEK
CHAUDHARY, and CHRISTINA
CHAUDHARY,

        Petitioners,

    -v.-

ILKB, LLC,

        Respondent.

22 Civ. 5549 (JHR)

OPINION AND ORDER

---

JENNIFER H. REARDEN, District Judge:

  Petitioners Vivek Chaudhary ("Vivek") and Christina Chaudhary ("Christina") (together, the "Chaudharys"), and their wholly-owned company VC Healthy Living, Inc ("VCH," and, together with the Chaudharys, "Petitioners"), move to confirm an arbitration award against Respondent ILKB, LLC ("ILKB," or "Respondent") pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. (the "FAA"). Respondent participated in the underlying arbitration hearing but has not responded to the instant Petition or otherwise appeared before this Court. For the reasons set forth below, the motion is granted.

## I. BACKGROUND[1]

### A. Factual Background

  VCH is an Arizona corporation through which the Chaudharys "purchased and operated their ILoveKickboxing franchise." ECF No. 1 (Pet.) ¶ 3. ILKB is a New York Limited Liability

---

[1] Unless otherwise noted, the facts set forth in this section are drawn from the Petition (Pet.), *see* ECF No. 1; the Local Civil Rule 56.1 Statement of Facts (Pet. 56.1), *see* ECF No. 23-1; the Declaration of Vivek Chaudhary (Decl.), *see* ECF No. 1-1; the Franchise Agreement (Agreement), *see* ECF No. 1-2; and the Partial Arbitration Award (Award), *see* ECF No. 1-3. Where facts stated in the uncontested Rule 56.1 Statement are supported by admissible evidence, the Court accepts those facts as true. *See* Local Civ. R. 56.1(c)-(d).

Company that formerly offered and sold ILoveKickboxing franchises. *Id.* ¶ 4. ILKB "is owned by a sole member, [Michael] Parrella" who is "a citizen of New York." ECF No. 19 at 3-4.

On April 22, 2014, Petitioners entered into three franchise agreements ("the Agreement") pursuant to which Petitioners would own and operate kickboxing franchises in Arizona. Pet 56.1 ¶ 1. In the Agreement, the parties "pledge[d] and agree[d]" to "first attempt to resolve any dispute, claim or controversy arising out of or relating to th[e] Agreement or any alleged breach hereof, including any claim that th[e] Agreement or any part hereof is invalid, illegal or otherwise voidable or void (collectively, 'Dispute')" through informal mediation. Agreement art. XIV § 14.1(a). The Agreement further provides that "[a]ny Dispute . . . that is not resolved through mediation, will be resolved through binding arbitration by one arbitrator from the list of retired judges referred by Judicial Arbitration and Mediation Services ('JAMS') and selected by the parties in accordance with . . . JAMS' Comprehensive Arbitration Rules and Procedures." *Id.* § 14.2(a); *see* Pet. 56.1 ¶ 2 (the Agreement "contained an arbitration provision that provided that any dispute between the parties would be resolved through binding arbitration in New York County, New York, and designated that the JAMS' Comprehensive Arbitration Rules would apply to any arbitration proceeding").

After signing the Agreement, Petitioners "engaged in an extensive search for a suitable location for their first studio, ultimately signing a lease in January 2015 and opening for business in early April 2015." Award at 7. However, "the VCH studio did not thrive" and ultimately "closed down on December 17, 2017." *Id.* at 9. "Following the demise of the studio, Vivek filed a personal bankruptcy petition on August 7, 2018. Subsequently, the landlord of the premises that he had rented for the studio obtained a substantial judgment for unpaid rent against all three [Petitioners]." *Id.*

On or about March 4, 2019, Petitioners filed their Demand for Arbitration against Respondent; Michael Parrella, Respondent's Chief Executive Officer; and Scott Ferrari, Respondent's Director of Franchise Development and President (together, the "Arbitration Respondents"). *Id.* at 3. Petitioners sought to recover damages from the Arbitration Respondents "on four theories: fraudulent inducement; fraud by omission; negligent misrepresentation; and breach of contract." *Id.* at 3. On March 21, 2019, the Arbitration Respondents filed a motion to dismiss or stay the arbitration proceeding on the ground that Petitioners "failed to comply with Section 14.1 of the Agreement, which requires that the parties first engage in good faith negotiations and then participate in a formal mediation before commencing any arbitration to resolve disputes arising out of their contractual relationship." *Id.* at 3; *see* Agreement art. XIV § 14.1(a) (providing that the parties shall "first attempt to resolve any dispute, claim or controversy arising out of or relating to th[e] Agreement . . . [by] conduct[ing] a good faith discussion and negotiation of the issues with a view to arriving at a settlement"). In September 2019, the parties entered into a forbearance agreement, pursuant to which Petitioners "stayed further proceedings for a period of time while an independent examiner considered the ability of [the Arbitration] Respondents to make settlement payments." Award at 4. By July 8, 2020, that proposed settlement "fell apart." *Id.*

On August 31, 2020, arbitrator Frank Maas (the "Arbitrator") denied the Arbitration Respondents' motion to dismiss or stay "because the [Petitioners] had participated in settlement discussions going far beyond what the Agreement required as a prerequisite to commencing an arbitration." *Id.* at 4. The Arbitrator then held an arbitration hearing on the merits on January 7 and 8, 2021. Pet. 56.1 ¶ 4.

On March 29, 2021, "after reviewing extensive briefing, numerous exhibits, and receiving two days of witness testimony," the Arbitrator issued a 36-page Partial Arbitration Award (the "Award"). *Id.* ¶ 7. In the Award, the Arbitrator found that Respondent "made two unlawful representations that Petitioners relied on to their detriment: (i) a representation in a Franchise Disclosure Document provided to Petitioners that said Respondent had no bankruptcies to disclose when it was required to disclose one bankruptcy under applicable federal and state law; and (ii) misrepresentations regarding the purported 'break even' point for new franchisees." Pet. 56.1 ¶ 6; *see* Award at 29 ("The Chaudharys spent $90,000 to acquire their three franchise locations, which . . . they would not have done had they known of the [ ] misrepresentation concerning [Respondent's] lack of any reportable bankruptcy history."); *id.* at 17 (Respondent "obviously intended that the Chaudharys would rely on . . . [the] breakeven analysis in the course of deciding whether to purchase an ILKB franchise.").

The Arbitrator dismissed Parrella and Ferrari from the case and awarded judgment for Petitioners against Respondent ILKB. Award at 28, 34 (ruling that "an award can be entered only against respondent ILKB" and "respondents Parrella and Ferrari are dismissed from this suit"). After determining that "Respondent was liable to Petitioners for damages caused by its negligent misrepresentations and omissions," the Arbitrator "carefully reviewed [Petitioners'] claim for damages, and ultimately awarded them $758,479, the amount of which was derived from the following: (a) $90,000 in franchise fees; (b) $107,526 in buildout costs; (c) $247,931 in operating losses; and (d) $313,022 in rent recovered by Petitioner's landlord as a result of Respondents' fraud, after making some deductions for what the Arbitrator determined were 'improper charges.'" *Id.* ¶¶ 7-8; *see* Award at 34 (awarding "damages in the amount of

4

$758,479, consisting of $90,000 in franchise fees, $107,526 in buildout costs, $247,931 in operating losses, and $313,022 in rent recovered by their landlord").

Finally, the Arbitrator noted that, although Petitioners "also [sought] to recover their reasonable attorneys' fees and costs," those "issues were neither briefed nor addressed during the evidentiary hearing." Award at 33. The Award therefore notes that "both sides will be permitted to make further submissions before the Arbitrator rules with respect to recoverable fees and costs" and with respect to "the manner in which prejudgment interest should be calculated." *Id.* at 33.

Although the Award is dated March 29, 2021, "the arbitration tribunal[] refused to issue the arbitration award after the hearing because ILKB had not paid its shares of the arbitration fees." Decl. ¶ 5. Petitioners eventually "paid ILKB's share of the arbitration fees" in April 2021. *Id.* The Award was served on all the parties on April 28, 2022. *Id.*; *see* Pet. ¶ 14 ("[T]he arbitration tribunal did not serve a copy of the award on Petitioners or Respondent until April 28, 2022 due to Respondent's refusal to pay its share of arbitrator and tribunal fees.").

The Award "was made final on May 12, 2022, pursuant to Rule 24(k) of the JAMS rules governing the proceeding." Pet. ¶ 15. That Rule provides that an arbitration award "is considered final, for purposes of . . . a judicial proceeding to enforce, modify or vacate the Award . . . , fourteen (14) calendar days after service if no request for a correction is made." *Id.*

### B. Procedural Background

On June 29, 2022, Petitioners initiated this action by filing a Petition to Confirm the Award, *see* Pet., which they promptly served on Respondent, *see* ECF No. 6. On August 23, 2022, Petitioners obtained a Certificate of Default, *see* ECF No. 10, and thereafter moved for default judgment against Respondent, *see* ECF No. 11. On January 22, 2023, the judge

previously assigned to this case issued an order to show cause, noting that "the complaint fails to state the citizenship of [Respondent's] members." [2] ECF No. 18. On February 2, 2023, Petitioners submitted their response to the Order, identifying Michael Parrella as the sole member of Respondent and identifying Parrella's state of citizenship as New York. *See* ECF No. 19.

On July 12, 2023, the Court ruled that the Order to show cause concerning subject matter jurisdiction (*see* ECF No. 18) was satisfied. ECF No. 21. On July 13, 2023, the Court denied Petitioners' motion for default judgment on the ground that "default judgments in confirmation/vacatur proceedings are generally inappropriate." ECF No. 22 at 1 (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006)). The Court further ordered Petitioners to move for confirmation of the Award in the form of a motion for summary judgment and established a briefing schedule for the parties. *Id.* at 1-2. Petitioners filed their summary judgment motion and supporting papers in accordance with that schedule, requesting that "a judgment be entered against Respondent confirming Petitioners' arbitration award in the amount of $758,479." ECF No. 23. On July 26, 2023, Petitioners served Respondent with their motion papers and with a copy of the Court's Order. ECF Nos. 25-28.

Respondent has not appeared in the case or responded to Petitioners' motion. Thus, the unopposed motion is ripe for the Court's consideration.

## II. LEGAL STANDARD

The Federal Arbitration Act "provides for expedited judicial review to confirm, vacate, or modify arbitration awards." *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 578 (2008). The

---

[2] This case was initially assigned to the Honorable Lewis J. Liman. It was reassigned to this Court in 2023.

Second Circuit "has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). "A court's review of an arbitration award is severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 274-75 (2d Cir. 2015) (quoting *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71-72 (2d Cir. 2012)).

Consistent with these principles, "confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). "The movant's burden 'is not an onerous one,'" *Bailey Shipping, Ltd. v. Am. Bureau of Shipping*, 431 F. Supp. 3d 359, 364 (S.D.N.Y. 2019) (citation omitted), and requires only "a barely colorable justification for the outcome reached," *Landy Michaels Realty Corp. v. Loc. 32B-32J*, 954 F.2d 794, 797 (2d Cir. 1992). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Bhd. Of Carpenters & Joiners*, 804 F.3d at 275 (alterations in original) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). "The Court's task is not to reconsider the merits of the dispute; after all, the parties bargained for the arbitrator's view of the facts and the law." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Blue Moon Health Mgmt. LLC*, No. 22 Civ. 1807 (KPF), 2022 WL 16578119, at *3

7

(S.D.N.Y. Oct. 31, 2022) (citation omitted). "Instead, [the court's] task is simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 537 (2d Cir. 2016) (quoting *Misco, Inc.*, 484 U.S. at 38).

In cases such as this, where the "petition to confirm an arbitration award is unopposed, courts should generally treat 'the petition and accompanying record . . . as akin to a motion for summary judgment.'" *Treasury Two Tr. v. Teras BreakBulk Ocean Navigation Enter. LLC*, No. 20 Civ. 4089 (GHW), 2020 WL 4937468, at *2 (S.D.N.Y. Aug. 24, 2020) (quoting *D.H. Blair & Co.*, 462 F.3d at 109). "Under the familiar summary judgment standard, 'a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Bailey Shipping, Ltd.*, 431 F. Supp. 3d at 364 (quoting Fed. R. Civ. P. 56(a)).

"However, 'even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law.'" *Mason Tenders Dist. Council of Greater N.Y. & Long Island v. Adalex Grp., Inc.*, No. 13 Civ. 764 (PAE), 2013 WL 5322371, at *3 (S.D.N.Y. Sept. 23, 2013) (alterations omitted) (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004)); *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("[W]hen a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."). Similarly, on an unopposed motion for confirmation of an arbitration award, a court "may not grant the motion without first

examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Mason Tenders Dist. Council of Greater N.Y. & Long Island*, 2013 WL 5322371, at *3 (quoting *D.H Blair & Co.*, 462 F.3d at 110).

### III.  DISCUSSION

#### A. Authority to Review Award

As a threshold matter, the Court must consider whether it has authority to review the Award, which is styled as a "Partial Arbitration Award" and leaves unresolved the issues of attorneys' fees and costs and prejudgment interest.  The Court concludes that the Award is "final" such that it can be reviewed and confirmed in this action.

"In proceedings to confirm arbitration awards, courts will typically confirm only final awards." *Glob. Gold Mining LLC v. Caldera Res., Inc.*, 941 F. Supp. 2d 374, 382 (S.D.N.Y. 2013).  "[T]o be final, an arbitration award 'must resolve all the issues submitted to arbitration,' and resolve them 'definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication.'" *Goldman v. Architectural Iron Co.*, No. 01 Civ. 8875 (DLC), 2001 WL 1705117, at *3 (S.D.N.Y. Jan. 15, 2001), *aff'd*, 306 F.3d 1214 (2d Cir. 2002) (quoting *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998)).  Further, an arbitration award that resolves "a 'separate and independent claim'" is considered final such that it "can be confirmed even though it does not, in and of itself, dispose of all claims." *HDI Glob. SE v. Phillips 66 Co.*, No. 22 Civ. 807 (VEC), 2022 WL 3700153, at *3 (S.D.N.Y. Aug. 26, 2022) (quoting *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986)).

Here, the Award is "final" because it "resolve[s] all the issues *submitted* to arbitration, and . . . resolve[s] them definitively enough so that the rights and obligations of the two parties,

*with respect to the issues submitted*, do not stand in need of further adjudication." *Rocket Jewelry Box, Inc.*, 157 F.3d at 176 (emphasis added). The Award states that the issues of attorneys' fees and costs and prejudgment interest "were neither briefed nor addressed during the evidentiary hearing." Award at 33. The Award further provides that "[a]ny remaining claims of the parties, even if not specifically discussed in this Partial Arbitration Award, are denied." *Id.* at 34. The presence of similar language in arbitration awards has been deemed sufficient to establish finality. *See Whittaker v. MHR Fund Mgmt. LLC,* No. 20 Civ. 7599 (AT), 2021 WL 9811715, at *8 (S.D.N.Y. Sept. 28, 2021) (confirming award that "state[d] it is in 'full settlement of all claims submitted to this Arbitration,' and that 'all claims not expressly granted herein are hereby denied'" on ground that "[t]his language alone is sufficient to deny vacatur on the basis of finality"); *Goldman*, 2001 WL 1705117, at *3, *aff'd*, 306 F.3d 1214 (2d Cir. 2002) (confirming award over respondent's objections where the award "state[d] that it 'is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied'" and where parties agreed to "bifurcate the determination of [] attorney[s'] fees").

B. **Confirmation of Award**

Petitioners have met their burden "to show that no genuine factual dispute exists." *Vt. Teddy Bear Co.*, 373 F.3d at 244. As an initial matter, "Petitioners have presented undisputed evidence that arbitration was appropriate in this case." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Jessica Rose Enters. Corp.*, No. 15 Civ. 9040 (RA), 2016 WL 6952345, at *3 (S.D.N.Y. Nov. 28, 2016). The Agreement "contained an arbitration provision that provided that any dispute between the parties would be resolved through binding arbitration in New York County, New York, and designated that the JAMS' Comprehensive Arbitration

Rules would apply to any arbitration proceeding." Pet. 56.1 ¶ 2; *see* Agreement art. XIV § § 14.1-.2 (providing that "any dispute, claim or controversy arising out of or relating to this Agreement . . . . "will be resolved through binding arbitration").

The dispute here stemmed from two misrepresentations by Respondent "that Petitioners relied on to their detriment: (i) a representation . . . [that] Respondent had no bankruptcies to disclose when it was required to disclose one bankruptcy under applicable federal and state law; and (ii) []representations regarding the purported 'break even' point for new franchisees." *Id.* ¶ 6; Award at 13 ("For purposes of resolving this case . . . two of the alleged misrepresentations . . . need [to] be addressed. First, . . . ILKB stated that there was no information concerning bankruptcy that it was required to disclose. Second, . . . Parrella gave a talk in which he discussed the 'break even' point for new franchisees."). The Arbitrator determined that Petitioners "entered into [the Agreement] based on the Respondents' representations." Award at 25. In sum, "the parties' dispute stems from Respondent's misrepresentations to induce Petitioners" to enter into the Agreement, and therefore the Agreement's "arbitration provision [ ] encompasses the present dispute." *Laura v. Pristec AG*, No. 20 Civ. 1364 (RA), 2020 WL 4287709, at *3 (S.D.N.Y. July 27, 2020) (confirming award where the arbitrator found that "Respondent's misrepresentations induce[d] Petitioners to transfer their shares of [petitioners' company] to Respondent, as provided for in the [parties' agreement]" ).

Moreover, the undisputed evidence "establishes that the arbitrator did not exceed the scope of his authority in rendering the Award." *Jessica Rose Enters. Corp.*, 2016 WL 6952345, at *3. The Agreement provides that the arbitrator "will have the right to award or include in the award any relief that the arbitrator deems proper in the circumstances, including money damages." Agreement art. XIV § 14.2(c). "Petitioners have submitted evidence demonstrating

that Respondent participated in the arbitration proceeding and was given the opportunity to present its arguments and defenses through . . . various pre-hearing motions." *Laura*, 2020 WL 4287709, at *3. Thus, "the arbitrator indisputably acted within the scope of his authority." *Id.*; *see Trs. of Mason Tenders Dist. Council Welfare Fund v. Sukhmany Constr., Inc.*, No. 15 Civ. 7200 (PAE), 2016 WL 3659925, at *3 (S.D.N.Y. July 1, 2016) (granting unopposed petition to confirm arbitration award after determining that "[t]he arbitrator acted within the scope of the authority granted him by the parties").

Finally, based on the Court's "severely limited" review of the undisputed evidence before it, *United Bhd. of Carpenters*, 804 F.3d at 274, the Court concludes that "the Award is proper," *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Regal USA Concrete Inc.*, No. 22 Civ. 8202 (JPC), 2023 WL 8644513, at *6 (S.D.N.Y. Aug. 9, 2023). After "carefully consider[ing] both parties' arguments," the Arbitrator "conclude[ed] that . . . '[Petitioners] would have refused to enter into the [Agreement] with [Respondent]' had they known about the various misrepresentations." *Laura*, 2020 WL 4287709, at *3 (confirming unopposed award); *see* Award at 17 (Petitioners "would not have purchased [the] franchises had [they] known of Parrella's bankruptcy and [they] relied on the representation that [they] would be able to break even after only four months of operation."). Furthermore, "[t]here is no indication that the Award was procured through fraud or dishonesty or that the [Arbitrator] was acting in disregard of the [Agreement] or outside the scope of [his] broad authority to resolve any dispute between the parties." *Treasury Two Tr.*, 2020 WL 4937468, at *2 (confirming unopposed award).

Accordingly, the Court grants Petitioners' motion and confirms the Award of $758,479.00.

## IV.  CONCLUSION

For the foregoing reasons, Petitioners' motion for summary judgment is GRANTED.

The Clerk of Court is directed to enter judgment in favor of Petitioners consisting of the arbitration award of $758,479.00.

The Clerk of Court is further directed to close this case.

SO ORDERED.

Dated: August 19, 2024
New York, New York

JENNIFER H. REARDEN
United States District Judge